The next case call for Elijah Nunez Peters v. Peppers, counsel. I had those two weeks ago, and luckily I can speak now, kind of, but I coughed up a bad two weeks ago. I don't know if I could have done this. My name is Mark Hunter. I'm an attorney for Metropolis. I've been retained to represent Marlon Greg Peppers on this appeal. I was not the attorney for the trial. Della Pruitt, an attorney from Kentucky, represented Mr. Peppers at the trial. Mr. Peppers was convicted of home invasion after a jury trial, being sentenced to 20 years in prison by Judge Foster, also fined $5,000. And I believe the only issue I've raised in my appeal is ineffective assistance of counsel. I understand that, you know, a lot of things we look at regarding ineffective assistance of counsel is trial strategy. However, I do not believe looking at the record as a whole, what Mr. Pruitt did during trial was reasonable. And I do believe, based upon the errors that he made, that the outcome would have been different if he would have done the appropriate job. The case against Mr. Peppers was totally circumstantial. There were no eyewitnesses that identified him or his co-defendant, Joey Drafton, as being the person who attacked Richard Modlin on – I believe it was July – I'm sorry, June 27th, 28th, 2007 is when it happened. There was a substantial amount of blood in Mr. Modlin's house. However, they were unable to link up any physical evidence between Mr. Peppers and the scene. They did go to Mr. Peppers' residence in Kentucky. They took into possession his vehicle, a white Chevrolet Blazer, and they searched it, and they believe they found what was bloodstains in the Blazer. They also found what they believe to be bloodstains in his residence. However, the crime lab was unable to match those up with anything that came from Mr. Modlin's residence. So there was really nothing that matched up physically Mr. Peppers with the crime. You said blood in the residence. What about blood in the vehicle? The blood in the vehicle did not or did match? It did not. Okay. Neither matched. So they basically built a circumstantial case against Mr. Peppers. They had a variety of things that they put into evidence, including the fact that a person that lived across the street from Mr. Modlin saw what he described as a white SUV leaving the scene about the time that the attack occurred. Mr. Modlin made a statement that night to an officer that he was attacked by two white males, which matched the descriptions of Mr. Peppers and Mr. Graven. And there were a variety of other things, of course, the state used in obtaining the conviction. Mr. Pruitt failed to do several things, and I'm going to address four of them. I think I addressed five in my brief, but I'm going to address four today. The first was the description that Mr. Modlin gave to Officer Tim Davis, the Tropic Police officer, on the night of the incident. When I think Officer Davis was, I believe, the first officer on the scene, he found Mr. Modlin on his porch, and he talked to him and asked him, of course, what happened. Mr. Modlin told him that he had been attacked by two white males. Mr. Modlin also told him that he was concerned about the safety of his wife. However, it turns out that his wife had died several months before the incident. It showed that he was confused, I believe, through that statement. Approximately seven days later at the hospital, a detective from Metropolis, Scott Deming, interviewed Mr. Modlin at length. Mr. Modlin, during a detailed statement that is about a page and a half long and is attached to my brief, he stated that he was walking down the hall, he was hidden behind, he never saw anyone, never heard anything. However, Mr. Pruitt did not bring out that contradiction during the case. He did not question Mr. Modlin about it. He did not call Scott Deming to testify about the inconsistencies that were given. It's true that Mr. Modlin, when he testified, was very confused, I believe. In fact, he didn't even know his age at the time that he testified. And he stated that he didn't know who attacked him. He didn't give the description of two white males while he was on the stand. However, that evidence did come in through Tim Davis. Mr. Pruitt failed to, I believe, act reasonably through his cross-examination of Mr. Modlin and his failure to put in the contradictory identification. The second thing that I want to talk about goes along the same type of failure to act reasonably, was the identification of the vehicle. A person who lived across from Mr. Modlin, and this attack occurred late at night, approximately 12, 12.30 in the morning. A Ralph Miller testified that he was asleep, that he was awakened by, I think he said, a loud exhaust. He looked outside his window and saw a vehicle leaving in front of Mr. Modlin's residence. His daughter arrived home a little bit later, and that's when she discovered Mr. Modlin out on the front porch, and the police were called. And, of course, they interviewed both his daughter and Ralph Miller. Ralph Miller testified during the trial that it was a white SUV that he saw, which, of course, matches the description of Mr. Pepper's vehicle, a white Chevrolet Blazer. However, that night he gave a statement to another officer. I believe that was Officer Basham. And that night, according to Officer Basham's report, which is also included, I believe, where he found the record, in that statement he told Officer Basham that it was a large white car that he saw leaving the scene. Again, Mr. Pruitt failed to bring that out in his cross-examination of Mr. Miller. Now, I realize, I guess, that a white car versus a white SUV may be not that much different. However, I believe it is. I believe in today's world people use car for different language than what an SUV is. And when he testifies at trial that it's a white SUV, but that night says it's a white car, and they use the fact that Mr. Pepper's has a white SUV in a circumstantial case against him, I think it's very damaging. And Mr. Pruitt failed to act reasonably. I believe it would have affected the outcome of the trial by bringing out those inconsistencies. Another person named Richard Ford testified. Richard Ford, I mean, there were some problems with Mr. Ford, but he primarily testified that he was acquainted with Mr. Pepper's and Joey Drafty, and that he was at Joey Drafty's residence during a telephone call that occurred two days before the incident. During that telephone call, he answered the phone, and he says he recognized the other person on the phone as being Mr. Pepper's. He handed the phone to Mr. Drafty. He overheard Mr. Drafty say between $2,500 and $5,000. Now, there was, on the record but outside the presence of the jury, there was discussion as to what type of testimony Mr. Ford testified to through a conspiracy theory. And Judge Foster ruled that he was going to allow some of the testimony to come in. Mr. Pruitt did object. In fact, I think he filed a motion to eliminate, but he did not object to this portion of the testimony coming in. There was no connection shown that the money they were talking to had anything to do with the planned or intended robbery of Richard Marshall. And I think the court allowed it through a conspiracy theory, but Mr. Pruitt failed to argue that there was no link. And therefore, I think by his failure to argue, he did not give Judge Foster the ability to. . . In fact, he basically conceded to it instead of objecting to what happened. And the final thing that I have pointed out in my brief that I want to talk about is the failure of Mr. Peppers to testify. There is a very extensive discourse outside the presence of the jury that Judge Foster did with Mr. Peppers in determining whether or not he understood his right to testify. Mr. Peppers did tell Judge Foster that he was not going to testify. However, of course, that was on advice of Mr. Pruitt. The problem I have with that is that, and the reason I think that that advice is not reasonable, is that, first of all, Mr. Peppers had no prior convictions to be impeached with. He also had made no statements to the police. However, I think it was very important that he testify. Not only to testify that he had a job, had income, and therefore didn't mean to rob somebody of their money, but also to explain some statements that he made that were recorded through an eavesdrop between him and another person named Cynthia Featherstone. There were a number of statements that could be, by implication, be damning to Mr. Peppers. He needed to explain why he said those things to Ms. Featherstone. Without him explaining those things, the jury was going to hear what was said and use that against him, of course. The decision to not have Mr. Peppers testify was a very poor decision. It was not reasonable based upon what was going on in that jury trial. I put a couple of things just to point out, I think, what shoddy work Mr. Pruitt did in the case. He did not file a motion for discovery. I realize I did not raise that during my post-trial motion, and I don't know what real effect that has on the case other than my worry about not filing a motion for discovery. I worry that the state, even though they have filed an answer to discovery, is not limited to the witnesses that they have produced in that answer. I also worry they're not limited to the statements that are produced, that maybe I didn't receive all the statements. I think you've got to file a motion for discovery to act reasonably and not be ineffective. And just, again, it didn't matter, I didn't raise it in my brief, but just a look at what he did. He allowed the court to sentence Mr. Peppers without filing a motion for new trial. If the state had objected to me filing a motion for new trial after sentencing, it's very possible that Mr. Peppers would have had no errors to raise in this case. Everything taken together that Mr. Pruitt did, I do not believe, shows reasonableness, and I believe if he had taken reasonable steps, the outcome would have been different. Thank you. Thank you, counsel. Counsel? Your Honor's counsel, it's true that there isn't a motion for discovery in the record, but why it's not there is a mystery since the people filed an answer to defendant's motion to discovery and thereafter continued to file a voluminous supplemental discovery. Defense counsel filed a motion to continue at one point because he hadn't received all of the discovery requested and he required more time to prepare. And then thereafter that supplemental discovery was provided. Trial counsel also obtained two subpoenas due case taken seeking phone records that were in the possession of the Paducah Police Department. Therefore, I mean, the record lacks physical proof of a motion for discovery, but its shadow is there in that the discovery was complied with and tendered. So he cannot show either deficient performance or prejudice because it's apparent that counsel did not proceed without having all of the discovery that was required. So that he fails to show both deficient performance and prejudice on that allegation. Now as to the victim's statement, the victim was an 83-year-old man who was beaten and suffered head injuries and intracranial bleeding. Within a few minutes of the attack, he was able to relate to police that he had been attacked and beaten and robbed by two white men. And yes, he was confused. His wife had died somewhat recently and he did express concern about whether his wife was okay. But he had been beaten about the head at that point. Anyway, seven days later he made a statement to Detective Scott Deming, which Scott Deming wrote down in his police report that he couldn't remember. All he remembered was walking down the hall and being hit on the head. But thereafter, he had no memory. He developed no long-term memory of this event at all. And the victim testified at trial that he couldn't remember anything about the incident. And there was testimony explaining why he would not have formed a memory. That's due to the head trauma and the intracranial bleeding. So, you know, how was it that counsel was supposed to use this police report, the victim's statement in a police report? You say his loss of memory was due to intracranial bleeding? And the head trauma. Did a doctor testify to that? Yes, yes, there was testimony to that. But it was undisputed that the victim couldn't remember anything. His statements to Officer Davis that was made just contemporaneous with the attack, that was permitted in as a spontaneous declaration, but it wasn't. And the defendant doesn't complain that that was incorrect. So just how was it that trial counsel was supposed to use the statement that, in the interview with Detective Scott Deming that was made seven days later? Well, the police report itself containing that statement was not admissible. So how could, I mean, the defendant doesn't posit how he was supposed to use this police report. And Scott Deming testifying at that point in an interview seven days later would have been hearsay. He doesn't propose how that should have been admitted. How was counsel supposed to get that in? Furthermore, it doesn't contradict anything that, I mean, you can use it for impeachment of the victim, Modulin, because Modulin says, I don't remember anything. And this would have been, you know, Deming's, his statement to Deming would have been pretty much consistent with that. I just remember walking down the hall. So just how was it counsel was supposed to utilize this report? Defense counsel, appellate counsel doesn't posit. So he fails to show deficient performance and prejudice again as to the statement to Deming. Now, as to Ralph Miller's statement. Now, Ralph Miller testified, and he said in his testimony, first he described the vehicle that he saw as a white sub or something like that. A white what? Sub, SUV. That's the way it is in the. Suburban? That's just the way it is. I don't know what he meant. He said white sub. You're saying sub, SUV? No, SUV. SUV. That's the way it is in the transcript. Whatever that means, that's what he said, and that's the way it is in the transcript. If they misheard, I don't know. But then later on he explained it was a white SUV or something like that, that the vehicle had four doors. And then during cross-examination, defense counsel elicited, he kept referring in his questions to Miller, he kept referring to, well, this vehicle, this van you saw. And pretty soon he convinces Miller to say, oh, yeah, it was a van, a white van. And then he also elicited from Miller that he could vision it as a white car. So defense counsel did an excellent job of bringing out every kind of discrepancy in the description that Miller gave. So he didn't, just because he didn't utilize this police report to impeach Miller, he didn't have to because Miller said it all in his testimony. So defense counsel did a fine job on this point. And, again, the defendant fails to show deficient performance or prejudice. Now, as to Ford's testimony, the first, the salient point is counsel did strenuously oppose Ford's testimony in its entirety. So he managed to persuade the court that the comment that Ford heard Draffin say after he hung up, which was the explanation that, oh, we're going to get this money by robbing an old man in Metropolis, he managed to get the court to pare that down so that the only thing that was allowed in of Ford's testimony was the fact that he overheard the between $2,500 and $5,000. Now, if at the point that Ford was testifying to this, which the court had now allowed, if at that point he had objected on the grounds that, well, we don't know how that connects up, he could have jeopardized the whole benefit of the ruling, which was to preclude Ford from testifying that he overheard Draffin explain that they were going to get this money by robbing a man from Metropolis. So the counsel stringently and strenuously opposed Ford's testimony. He did everything he could to get it pared down. He was successful. If he had done anything more, he would have risked losing the benefit of the favorable ruling. And so, again, the defendant fails to show deficient performance or prejudice. And he doesn't claim that a conspiracy wasn't shown or that the jury wasn't allowed to make a broad interpretation of the terms of the conspiracy, since conspiracy itself is a secretive kind of thing. And the jury could have made the connection between the conspiracy itself, which was clearly to rob Mr. Modulin, and what this reference between $2,500 and $5,000 meant to. Now, as to the defendant's testimony, the defendant was questioned by the court. The court said, you know, is this your decision? You know, have you talked to counsel? And the court explained that despite what counsel's advice was, it was his choice whether to testify or not. And the defendant, on the record, chose not to testify. Now, at that point in time, how was it that counsel was to call him? I do not know, because this is a choice that is for the defendant himself, and he chose himself not to testify. So, all in all, the defendant fails to show deficient performance or prejudice, and we ask the court to approve. Thank you, counsel. Counsel? A couple of things. Regarding how to go about questioning Mr. Modulin regarding the statement he had made at the hospital about seven days afterwards, I think you merely need to question Mr. Modulin. Did he make the statement? If he does not remember, you show him the statement, refresh his memory. And if he fails to go through with that, call Scott Denby to testify that he took the statement. I think that's simply done if you look at the statement that was made by Mr. Modulin. I realize it's not signed. Police never do that anymore. They just go ahead and summarize statements that they take, but he's very coherent. On July 5th, 2007, when he talks to Scott Denby at the hospital, he talks about the money he had loaned Cynthia Featherstone. He talks about what he did that evening, when he went to bed, that he checked the back door and it was locked. There's a number of details in there, including the fact that he said he felt something hit him in the back of the head, and he advised that he did not remember seeing anyone or hearing anything. I think it's very important to bring that out. When he stated that night, there was two white males that had cost him. Regarding Ralph Miller's statement, that alone might be enough, I think, to poke enough hole into the circumstantial case that they had regarding a white car. He made it that night, but it was precious in his mind. It was a white car, not a white SUV. I don't believe it was reasonable. I'm not sure it did, and I believe the outcome would have been different. Thank you. Thank you, counsel. We appreciate the briefs and arguments of both counsel, and we'll put the case under advisement.